IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Nicholas Boan a/k/a                    )    Civil Action No.:2:11-02078-RBH-BHH
Nicholas James Boan,                   )
                                       )
                    Petitioner,        )    **REPORT AND RECOMMENDATION**
                                       )    **OF MAGISTRATE JUDGE**
        v.                             )
                                       )
Warden of Lee Correctional Institution,)
                                       )
                    Respondent.        )
                                       )

        The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254.

This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt.

No. 21; see also Dkt. No. 20; Dkt. No. 22.)

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant

petition for relief and submit findings and recommendations to the District Court.

        The Petitioner brought this habeas action on or about July 19, 2011. (Dkt. No. 1.) On

January 9, 2012, the Respondent moved for summary judgment (Dkt. No. 21; see also Dkt.

No. 20; Dkt. No. 22.) By order filed January 11, 2012, pursuant to Roseboro v. Garrison,

528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal

procedure and the possible consequences if he failed to adequately respond to the motion.

(Dkt. No. 23.)  On or about January 27, 2012, Petitioner filed a Response in Opposition to

the Motion for Summary Judgment. (Dkt. No. 25.)

## PROCEDURAL HISTORY

        The Petitioner is currently confined at Lee Correctional Institution ("LCI"). In April of

2004, Petitioner was indicted by the Marlboro County Grand Jury for one count of Criminal

Sexual Conduct with a Minor, First Degree (2004-GS-34-0593), and two counts of

Committing or Attempting a Lewd Act Upon a Child (2004-GS-34-0592 & 2004-GS-34-

0594). (See App. 881-86.) Petitioner, who was represented by Attorney Daniel Blake, proceeded to a trial by jury before the Honorable John M. Milling on May 17-21, 2004. (App. 1-815.) Petitioner was found guilty of all three charges on May 21, 2004. (See App. at 802.) On May 21, 2004, Petitioner was sentenced to twenty years of incarceration on the charge of Criminal Sexual Conduct with a Minor, First Degree (2004-GS-34-0593); fifteen years on one charge of Committing or Attempting a Lewd Act Upon a Child (2004-GS-34-0592); and ten years on the other charge of Committing or Attempting a Lewd Act Upon a Child (2004-GS-34-0594). (App. at 812-13.) Although Judge Milling set the sentences on Indictments 2004-GS-34-0593 and 2004-GS-34-0592 to run concurrently, the sentence on Indictment 2004-GS-34-0594 ran consecutive to the other two indictments. (App. at 813.)

Petitioner appealed and was represented on appeal by Tara S. Taggart, Esquire, of the South Carolina Office of Appellate Defense. (See Dkt. No. 20-2.) In an Anders[1] brief filed on June 28, 2005, appellate counsel argued that the "trial court erred in allowing the state to consolidate indictments involving separate victims." (Dkt. No. 20-2 at 5 of 9.) Ms. Taggart also filed a petition to be relieved as counsel. (Id. at 7 of 9.) On or about August 4, 2005, Petitioner filed a *pro se* Brief of Appellant, (Dkt. No. 20-4), wherein he argued as follows:

(1) Trial counsel's performance was deficient because he had a "conflict of interest" in that trial counsel, previously a prosecutor, stood against Petitioner "in two prior acts of court" (Dkt. No. 20-4 at 6-11 of 36).

(2) The prosecutor "erred in her closing argument, prejudicing the [Petitioner], by suggesting that the jury find guilt because of the 'crime charged,' hence, the crime itself, and not due to a finding that the Applicant was in fact guilty or no." (Dkt. No. 20-4 at 12-17 of 36.)

(3) The trial judge abused his discretion in twice failing to grant Petitioner's motion for directed verdict "when the evidence produced at trial was insufficient to prove the elements of the charges." (Dkt. No. 20-4 at 18-22 of 36.)

---

[1] Anders v. California, 386 U.S. 738 (1967).

2

(4) The trial judge "erred in the charge to the jury on 'reasonable doubt.'" (Dkt. No. 20-4 at 23- of 36.)

(5) The trial judge "orally pronounced a 20 year sentence but wrote 30 years on my sentencing sheet" for the charge of Criminal Sexual Conduct with a Minor, First Degree. (Dkt. No. 20-4 at 26- of 36.)

(6) It was improper for the charges against him to be consolidated into one trial. (Dkt. No. 20-4 at 26-28 of 36.)

(7) The trial judge abused his discretion "in sustaining [the] prosecutions [sic] objection to allowing into evidence, medical records which show that injury, purported to have been caused by Petitioner, in actuality was a prior injury, not caused by Petitioner, and is an ongoing medical problem for the purported victim." (Dkt. No. 20-4 at 29-32 of 36.)

(8) The trial judge erred "in allowing the use of multiple instances of perjured testimony during trial." (Dkt. No. 20-4 at 33-35 of 36.)

(See Dkt. No. 20-4.)

In an unpublished opinion filed on April 11, 2006, the South Carolina dismissed Petitioner's appeal and granted counsel's petition to be relieved. See State v. Boan, No. 2006-UP-191 (S.C. Ct. App. Apr. 11, 2006); see also Dkt. No. 20-5. Petitioner filed a Petition for Rehearing on or about April 19, 2006. (See Dkt. No. 20-6.) The South Carolina Court of Appeals denied the request for rehearing in an Order dated June 29, 2006. (See Dkt. No. 20-8.) The Court of Appeals issued the remittitur on August 4, 2006. (See Dkt. No. 20-9.)

On or about July 14, 2006, Petitioner filed an application for post-conviction relief ("PCR"). (App. at 825-94.) The following questions and answers appeared on his application:

10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:

(a) conflict of interest

(b) Batson violation

(c) manufactured indictments

11. State concisely and in the same order the facts which support each of the grounds set out in (10):

(a) Mr. Dan Blake was the prosecutor, then my public defender

(b) The key witness for the state was in [the] jury room

(c) The indictments are true billed before grand jury convened.

(App. at 827.) In the brief attached to his application, Petitioner raised several additional grounds:

(a) Trial counsel's performance was deficient because he was under a conflict of interest. (App. 836-38.)

(b) The trial court "den[ied] . . . a fair trial and conatminate[d] the jury" when it "create[d] a serious <u>Batson</u> violation[] by allowing the State's main witness . . . to be sequestered with the jury during trial." (App. 839.)

(c) The court erred by not dismissing the indictments "because they had not been true billed by the grand jury, but were manufactured by [the] solicitor." (App. 843.)

(d) The prosecutor "erred in her closing argument, prejudicing the [Petitioner], by suggesting that the jury find guilt because of the crime charged, hence, the crime itself, and not due to a finding that the Applicant was in fact guilty or no." (App. 846.)

(e) The trial judge "abuse[d] his discretion" by twice failing to grant Petitioner's Motion for a Directed Verdict "when evidence produced at trial was insufficient to prove the elements of the charges against the defendant." (App. 848.)

(f) The trial judge "abused discretion in sustaining [the] prosecution's objections to allowing into evidence[] medical records which showed that injury, purported to have been caused by Petitioner, in actuality was a prior injury, not caused by Petitioner, and is an ongoing medical problem for the purported victim." (App. at 848.)

(g) The trial judge "orally pronounced a twenty (20) year sentence, but [he] wrote thirty (30) years on [the] sentencing sheet" for the charge of Criminal Sexual Conduct with a Minor, First Degree. (App. at 852.)

(h) The charges against Petitioner should not have been consolidated into one trial. (App. at 853-54.)

4

(i) The trial judge "erred in the charge to the jury on 'reasonable doubt.'" (App. at 855.)

(j) The trial judge "err[ed] in allowing the use of multiple instances of perjured testimony during the trial." (App. at 857.)

(k) Trial counsel was constitutionally ineffective. (App. at 858-62.)

(l) double jeopardy (App. 863-64.)

(m) The court erred "by not having Hispanic races and Indians" in the jury pool, and there was a "Batson and equal protection and due process of law violation" by their exclusion. (App. at 866.)

(See App. at 836-88.) Petitioner subsequently filed a Motion "to Amend PCR with Supporting Issues and Case Laws." (See App. at 889.) Therein, Petitioner raised the following issues:

(a) The court erred "by allowing testimony to be admitted, when [the] State's expert witness used terms not recognized in the medical field and [there was] no literature to support her finding." (App. at 890.)

(b) Counsel was ineffective for "failing to raise [the issue of] manufactured indictments before the jury was sworn in." (App. at 891.)

(c) The prosecutor "erred in her closing argument, prejudicing the [Petitioner], by suggesting that the jury find guilt because of the crime charged, hence, the crime itself, and not due to a finding that the Applicant was in fact guilty or no.

(App. at 890-94.)

On May 14, 2007, an evidentiary hearing was held before the Honorable Paul M. Burch. (App. at 900-46.) Petitioner was present and represented by G. Miles Gordon, Esquire. In an order dated July 26, 2007, Judge Burch denied the application for post-conviction relief and dismissed the petition. (App. at 947-55.)

Petitioner filed a Notice of Appeal. (See Dkt. No. 20-10.) Kathrine Hudgins, Esquire, of the South Carolina Commission on Indigent Defense, filed a Johnson petition for writ of certiorari on behalf of Petitioner, raising the following issue: whether the PCR judge "err[ed] in refusing to find counsel ineffective for failing to correct the discrepancy in the 20 year

sentence announced by the trial judge on the record and the 30 year sentence that appears on the sentencing sheet." (Dkt. No. 20-11 at 3 of 9.)[2] Thereafter, on June 11, 2008, Ms. Hudgins filed a Petition to Be Relieved as Counsel. (Dkt. No. 20-11 at 8 of 9.) On or about June 19, 2008, Petitioner filed a *pro se* Response to the Johnson petition. (See Dkt. No. 20-13.) In his *pro se* brief, Petitioner argued as follows:

1. Trial counsel was ineffective because he labored under a conflict of interest. (Dkt. No. 20-13 at 7-9 of 53.)

2. The trial court "create[d] a serious Batson violation and the judge commit[ted] constructive fraud by sequestering the State's key witness . . . with the jury, after they had been selected to serve on this case." (Dkt. No. 20-13 at 10-12 of 53.)

3. The trial court erred by not dismissing the indictments "because they had not been true billed by [the] grand jury" but instead were "manufactured by [the] solicitor." (Dkt. No. 20-13 at 13-15 of 53.)

4. The trial court erred "by allowing testimony to be admitted, when [the] state's expert witness used terms not recognized in the medical field and [there was] no literature to support her finding." (Dkt. No. 20-13 at 16 of 53.)

5. The prosecutor "erred in her closing argument, prejudicing the Applicant, by suggesting that the jury find guilt because of the crime charged, hence, the crime itself, and not due to a finding that the Applicant was in fact guilty or no." (Dkt. No. 20-13 at 17-18 of 53.)

6. The trial judge twice "abuse[d] his discretion by failing to grant defense counsel's motion for directed verdict . . . , when evidence produced at trial was insufficient to prove the elements of the charges against the defendant." (Dkt. No. 20-13 at 19-20 of 53.)

7. The trial judge "abused [his] discretion in sustaining [the] prosecution's objections to allowing into evidence[] medical records which showed that injury, purported to have been caused by Petitioner, in actuality was a prior injury, not caused by Petitioner, and is an ongoing medical problem for the purported victim." (Dkt. No. 20-13 at 21- of 53.)

8. The trial judge erred when he wrote thirty years on the sentencing sheet for the charge of Criminal Sexual Conduct with a Minor, First Degree, because

---

[2]See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

the judge "orally pronounced" a twenty-year sentence. (Dkt. No. 20-13 at 23 of 53.)

9.  The charges against Petitioner should not have been consolidated into one trial. (Dkt. No. 20-13 at 25-24 of 53.)

10. The trial judge erred in charging the jury on reasonable doubt. (Dkt. No. 20-13 at 26-27 of 53.)

11. The trial judge erred in "allowing the use of multiple instances of perjured testimony during the trial." (Dkt. No. 20-13 at 28 of 53.)

12. Trial counsel was ineffective because:
    (a) Counsel "committed a 'conflict of interest' and deprived [P]etitioner of a fair trial."
    (b) Counsel "failed to raise the issue of insufficient evidence to prove the elements of the charges against the defendant."
    (c) Counsel "failed to use [the] victims [sic] statement and videos to impeach victims and witnesses when counsel knew victims denied parts of statements and committed perjury."
    (d) Counsel failed to object to the prosecutor's improper remarks during closing arguments.

13. The trial court erred by not dismissing indictment 0592 "because it overlapped" into indictment 0593, "and this was the judge's duty, under [the] Double Jeopardy Clause." (Dkt. No. 20-13 at 34-35 of 53.)

14. Trial counsel was ineffective for "failing to raise the above issues." (Dkt. No. 20-13 at 36 of 53.)

15. The trial court erred "by not having Hispanics races and Indians on jury pool," and there was "a Batson and equal protection and due process of law violation under the Fourteenth Amendment by [the S]tate excluding them." (Dkt. No. 20-13 at 37-43 of 53.)

(See Dkt. No. 20-13.)

On January 7, 2009, the Supreme Court of South Carolina denied Ms. Hudgins' request to be relieved and directed the parties to address the following question:

Did the PCR judge err in finding counsel was not ineffective for failing to file a motion to reconsider petitioner's sentence when there was a ten year discrepancy between the sentence announced by the trial judge and the sentence on the sentencing sheet?

(Dkt. No. 20-14.) Thereafter, both Ms. Hudgins and the State briefed this issue. (See Dkt. No. 20-15; Dkt. No. 20-16.)

On October 22, 2009, the Supreme Court of South Carolina granted the petition for writ of certiorari. (See Dkt. No. 20-17.) In his Brief, Petitioner argued that the PCR judge erred "in finding counsel was not ineffective for failing to file a motion to reconsider petitioner's sentence when there was a ten year discrepancy between the sentence announced by the trial judge and the sentence on the sentencing sheet." (Dkt. No. 20-18 at 4 of 10.)

In an Order filed July 12, 2010, the Supreme Court of South Carolina reversed the PCR judge's denial of relief and remanded the case for resentencing on the offense of Criminal Sexual Conduct with a Minor, First Degree. (Dkt. No. 20-20.) The matter was remitted to the lower court on July 29, 2010. (Dkt. No. 20-21.)

On August 13, 2011, the Honorable J. Michael Baxley entered an Amended Sentencing Order, whereby Petitioner's sentence for criminal sexual conduct with a minor, first degree, was amended "to reflect the oral sentence issued following Petitioner's trial on the . . . indictment: twenty (20) years." (Dkt. No. 20-22.)

Petitioner's instant habeas action raises the following grounds for review (verbatim):

**Ground One**: Conflict of Interest/Extrinsic fraud
**Supporting Facts**: When I was arrested in June 2003, Mr. Blake was the prosecutor and denied my bond two times. In December 2003 Mr. Blake became my public defender, he represented me at trial. Because of his prior role he should have removed himself but did not. He deceived the court, and denied by right to counsel guaranteed by the Constitution.

**Ground Two**: Constructive fraud by trial judge
**Supporting Facts**: During the course of the trial, the trial judge sequestered states key witness in the jury room during trial. The records supports this, even though trial claims it was a misstatement, and PCR judge allowed trial judge to dispute the facts of the fraud when law says PCR judge cannot allow the fraud to be disputed.

8

**Ground Three**: Manufactured indictments
**Supporting Facts**: During the course of my arrest, I was supposedly indicted, yet my indictments are true billed before the grand jury convenes to true bill them, voiding any conviction and sentence.

**Ground Four**: False testimony by a state expert
**Supporting Facts**: During trial the state called a witness to be an expert, yet she used terms not recognized in the medical field, and make up terms with no literature to support her finding.

**Ground Five**: Prosecutorial misconduct
**Supporting Facts**: During closing arguments the prosecutor made several unfair remarks that prejudiced the jury. She made improper remarks, vouched for the credibility of the states witnesses, cast the defense an aura of doubt by insinuating the defense had lied, inflaming the passions of the jury. Infringing upon the fact-finding function.

**Ground Six**: Abuse of discretion by trial judge on motion for directed verdict
**Supporting Facts**: On two separate occasions, when evidence at trial was insufficient to prove the elements, trial judge denied, but offered defense to consider lesser charge.

**Ground Seven**: Abuse of discretion by trial judge for not allowing medical, which if allowed would have shown that purported injury, was if an injury prior to supposed crime.
**Supporting Facts**: Medical records at trial would have shown that injury supposedly committed . . . was actually prior injury unrelated to defendant.

**Ground Eight**: Consolidation of cases
**Supporting Facts**: During trial the judge combined two trials into one. This added two victims, when allegations were not supported by facts. They were not related in kind, place, and character.

**Ground Nine**: Perjured testimony
**Supporting Facts**: During trial, the judge allowed the use of perjured testimony. Witnesses and victim denied their statements even though they have written documents. Then on the stand they denied or changed their accounts, on where misleading.

**Ground Ten**: Trial judge erred on charge to the jury on charge of "reasonable doubt."
**Supporting Facts**: During trial when the judge gave the charge on "reasonable doubt" he misled the jury to believe that if they had doubt they could still find defendant guilty, because the law didn't require that doubt.

**Ground Eleven**: Ineffective assistance of counsel

**Supporting Facts**: During trial, trial counsel was ineffective on several issues, and committed a conflict/fraud with his role as prosecutor and my attorney. Just because counsel is present at trial alongside the accused isn't enough to satisfy the Constitutional Amendments of due process, and right to counsel.

**Ground Twelve**: Violation of the Double Jeopardy Clause
**Supporting Facts**: When I was indicted at first I had one charge on victim A****, but when re-indicted on same charge and higher charge. State didn't dismiss the lesser when if the greater is proven the lesser will also violate the Double Jeopardy Clause.

**Ground Thirteen**: <u>Batson</u> violation and equal protection
**Supporting Facts**: During trial there were only whites and blacks selected on my jury pool. There was no Hispanics, Mexicans, Puerto Rico/Cubano when Marlboro County used racial discrimination manner to pick jury.

**Ground Fourteen**: Enhanced sentence when gave lesser sentence, but wrote more on sentencing sheet.
**Supporting Facts**: During sentencing the judge at trial sentenced me to 20 years on the CSC charge, yet wrote 30 years on the sentencing sheet.

(Dkt. No. 1.)

Respondent filed a Motion for Summary Judgment on January 9, 2012. (<u>See</u> Dkt. No. 21; Dkt. No. 22.) Petitioner filed his Response in Opposition on or about January 27, 2012. (<u>See</u> Dkt. No. 25.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 410.

**DISCUSSION**

Respondent moved for summary judgment on all of Petitioner's grounds for relief. (See Dkt. No. 21; see also Dkt. No. 20; Dkt. No. 22.)[3] The undersigned will address all of Petitioner's grounds in turn.

## A. Ground One

In Ground One, Petitioner claims that his attorney labored under a "conflict of interest/extrinsic fraud." He complains that his attorney was a former prosecutor and appeared against Petitioner in this case two times. Respondent seeks summary judgment on this claim, contending that Petitioner has not shown he is entitled to federal habeas relief on Ground One. (Dkt. No. 22 at 39 of 73.)

In addressing this claim, the PCR judge noted that Petitioner "stated trial counsel had a conflict of interest because he was employed by the solicitor's office when he was arrested," but Petitioner "admitted he never brought up this issue with either trial counsel or the trial judge." (Dkt. No. 22-11 at 61 of 68.) The PCR judge noted that trial counsel testified differently:

> Trial counsel testified he was an assistant solicitor before he became the public defender in December 2003. Trial counsel testified he specifically remembered asking the Applicant whether he wanted another attorney to represent him, and that the Applicant said no. Trial counsel testified the Applicant waived the conflict issue, but that he would have requested another attorney on this case if the Applicant had wanted another attorney.

---

[3]The undersigned notes that Respondent moved for summary judgment on the grounds that the instant petition is barred by the statute of limitations. According to Respondent, the deadline to file the instant habeas action was July 29, 2011. Respondent asserts that because the instant action was filed on August 4, 2011, "Petitioner exceeded the statute of limitations by six days." (Dkt. No. 20 at 27.) In a footnote, Respondent contends "[t]here is no indication on the Petition that it was provided to the institution for mailing," so the earliest the petition can be considered filed is August 4, 2011, the date it was placed in the mail. (Dkt. No. 20 at 27 n.3.) The undersigned disagrees. There is evidence that Petitioner placed the instant petition in the prison mailing system on July 19, 2011. (See Dkt. No. 1 at 14 of 35.)

(Id.) The PCR judge found Petitioner's "testimony is not credible" but that "trial counsel's testimony is credible." (Id. at 62.) The PCR order further states,

> This Court finds the Applicant has failed to meet his burden of proving trial counsel had a conflict of interest in this case. An applicant alleging his conviction was unlawful due to a conflict of interest from counsel's representation bears the burden of showing that a potential conflict actually materialized into a realized conflict adversely affecting counsel's performance. This Court finds that trial counsel and the Applicant discussed whether trial counsel should continue to represent the Applicant in this case. This Court finds the Applicant chose to waive any potential conflict issues in his decision to retain trial counsel as his attorney. This Court finds the Applicant has failed to show how any <u>actual</u> conflict materialized in this case.

(Id. at 62-63 (citations omitted).)

The Sixth Amendment to the United States Constitution "guarantees criminal defendants the right to effective assistance of counsel, including the right to representation free from conflicts of interest." <u>Gilbert v. Moore</u>, 134 F.3d 642, 652 (4th Cir. 1998). Counsel is constitutionally ineffective if: (1) counsel's performance was deficient, or fell below an objective standard of reasonableness; and (2) this deficient performance prejudiced the client's case so that the criminal defendant was deprived of a fair trial. <u>See Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). To establish the first prong, a petitioner asserting a conflict of interest claim must demonstrate (1) that an actual conflict existed and (2) that it adversely affected counsel's performance. <u>See Cuyler v. Sullivan</u>, 446 U.S. 335, 350 (1980). If these two prongs are met, the petitioner need not demonstrate prejudice. <u>United States v. Magini</u>, 973 F.2d 261, 263 (4th Cir. 1992).

In <u>Hernandez v. Johnson</u>, 108 F.3d 554 (5th Cir. 1997), the Fifth Circuit addressed the appellant's claim that his attorney's "service as a district attorney during the period of appellant's prior convictions created an actual conflict of interest that adversely affected [the attorney's] performance under <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980)." <u>Hernandez</u>, 108 F.3d at 559. The petitioner argued "that since the . . . [previous convictions] were pled

in the indictment and introduced by the state at the penalty phase, [his attorney] faced a choice between challenging convictions obtained during his tenure as district attorney or not providing appellant with zealous representation." Id. at 560. Rejecting the petitioner's claim, the Fifth Circuit stated,

> Like the state trial court and federal habeas court, we are not convinced that petitioner has shown an actual conflict of interest. A mere possibility of conflict does not raise a presumption of prejudice, and "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Cuyler, 446 U.S. at 350. . . . [His counsel] personally searched the records of the prior felonies before representing Hernandez to determine whether he was involved in those prosecutions and concluded there was no hindrance. Under these circumstances, where Borchers was only tenuously and nominally connected to the prior cases against Hernandez, it can hardly be said that he "actively" represented conflicting interests. See Cuyler, 446 U.S. at 350. . . .
>
> In addition to finding that no conflict arose, the federal district court found that appellant did not provide "any evidence that this alleged conflict affected Borchers' performance. We agree, and thus Hernandez cannot meet the adverse effect prong of Cuyler.

Hernandez, 108 F.3d at 560.

In the instant case, Petitioner contends he is entitled to habeas relief because his defense attorney was the prosecutor when Petitioner was arrested in June of 2003, and his attorney "denied [Petitioner's] bond two times." The undersigned disagrees and therefore recommends granting summary judgment to Respondent on Ground One. The PCR court found that Petitioner "failed to meet his burden of proving trial counsel had a conflict of interest in this case" and found that Petitioner "chose to waive any potential conflict issues in his decision to retain trial counsel as his attorney." (Dkt. No. 22-11 at 62-63 of 68.) This conclusion is not contrary to, or an unreasonable application of, clearly established federal law. Assuming a conflict existed, Petitioner has not shown that the alleged conflict adversely affected his attorney's performance. Petitioner instead argues that simply because his counsel argued against him with respect to his bond–several months before counsel was

14

appointed to represent Petitioner and several months before his trial–his conviction should be reversed. Petitioner's contention is not sufficient to warrant habeas relief. See Cuyler, 446 U.S. at 348 ("In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."); Rubin v. Gee, 292 F.3d 396, 401 (4th Cir. 2002) ("Adverse effect cannot be presumed from the mere existence of a conflict of interest." (citing Mickens v. Taylor, 535 U.S. 162, 171-72 (2002))); cf. Williams v. French, 146 F.3d 203, 212 (4th Cir. 1998) (In the context of representation of multiple defendants, the "adverse performance prong is met if the attorney took action on behalf of one client that was necessarily adverse to the defense of the other or failed to take action on behalf of one because it would adversely affect the other.").

Furthermore, the PCR court found that Petitioner waived any potential conflict issues in his decision to retain trial counsel as his attorney. This conclusion is not contrary to, or an unreasonable application of, clearly established federal law, nor is it an unreasonable determination of the facts. "A defendant may waive his right to conflict-free representation, provided that the waiver is knowing, intelligent, and voluntary." United States v. Akinseye, 802 F.2d 740, 744-45 (4th Cir. 1986) (citing Holloway v. Arkansas, 435 U.S. 475, 483 n.5 (1978); Brady v. United States, 397 U.S. 742, 748 (1970)). At the PCR hearing, the following colloquy occurred with Petitioner's trial counsel:

> Q. You specifically recall representing the State against Mr. Boan at any hearings?
>
> A. We did have some bond hearings. Again I handled those bond hearings. He was represented by Mr. Crow. I specifically remember talking to Mr. Boan when I became Public Defender and asked him if he wanted me to continue to represent him. He said that he did. Had he said any different I would have certainly gotten someone else appointed.
> . . .
> We did–Mr. Boan and I did talk and he wanted me to continue. . . .

15

. . . .

Q. You testified you had a discussion with Mr. Boan about a potential conflict of interest. Can you tell us what y'all talked about during that discussion to the best of your recollection?

A. Well, when he switched over from being in the Solicitor's Office to become the Public Defender's Office I went and reviewed the ethics rule relating to that, and met with Jay Hodge, who was the Solicitor at that time. And we literally discussed each of those different cases.

There was–really, for me becoming Public Defender was two issues. One was whether I had a substantial involvement as the Solicitor, and then, second, of course, was whether or not the client wanted to continue with me. And in Mr. Boan's case I do specifically remember asking him about this because I knew that he was thinking about going to trial.

And you know we discussed that he could get another attorney. It wouldn't cost him any money, but it was simply a matter of me requesting the Clerk of Court to assign another attorney to him. He said that he wanted me as his attorney. Had he had at any time between December when I took the job over and I think the trial was in May, near the end of May, if at any time he asked for another attorney I certainly would have gotten it for him.

(Dkt. No. 22-11 at 33, 42-43 of 68.) Although Petitioner testified that he never discussed the potential conflict of interest with his trial counsel, the PCR court found Petitioner's testimony was not credible and that counsel's testimony was credible. (Dkt. No. 22-11 at 62 of 68.) In addition, the PCR court specifically found that Petitioner and trial counsel "discussed whether trial counsel should continue to represent" Petitioner and that Petitioner "chose to waive any potential conflict issues in his decision to retain trial counsel as his attorney." (Id. at 63.) These factual findings are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003); Evans v. Smith, 220 F.3d 306, 312 (4th Cir. 2000) ("We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence."). Petitioner has not rebutted these factual findings by clear and convincing evidence. The undersigned therefore

recommends granting Respondent's Motion for Summary Judgment with respect to Ground One.

## B. Ground Two

In Ground Two, Petitioner claims the trial judge committed "constructive fraud" in his case; Petitioner states, "During the course of the trial, the trial judge sequestered [the State's] key witness in the jury room during trial." Respondent seeks summary judgment on this claim, contending that Petitioner does not meet the standard set forth in § 2254. (See Dkt. No. 20 at 42 of 73.)

The PCR judge addressed this claim for relief and noted Petitioner's testimony at the PCR hearing that the State's witness, Kristy N., was sequestered with the jury panel. (Dkt. No. 22-11 at 61 of 68.) The judge also described trial counsel's testimony:

> Trial counsel stated Kristy, in addition to being a State's witness, was at court because he had served a subpoena duces tecum upon her to compel her to provide certain items to him. Trial counsel stated he did not believe Kristy was sitting in the jury room with the jurors and stated he would have objected if this were the case.

Id. at 61-62.) In rejecting this claim, the PCR judge stated,

> This Court finds the Applicant has failed to meet his burden of proving error by either the trial judge or trial counsel regarding whether Kristy was located in the jury room at trial. At one point before the trial commenced, the following exchange took place:
> > THE COURT: Kristy back in the jury room where the jurors are sequestered?
> > PROSECUTOR: Yes, sir, Your Honor.
> (Trial Transcript, p. 114, lines 12-14.) This Court finds that, based upon trial counsel's testimony and Judge Milling's affidavit, this comment by Judge Milling was a mere misstatement. This Court finds Kristy . . . a State's witness, was not held in the same room as the jury panel at any point before the trial.

(Dkt. No. 22-11 at 63 of 68.)

The PCR court specifically found that the State's witness was not sequestered with the jury panel. This factual finding is entitled to deference. See 28 U.S.C. § 2254(e)(1); see

also <u>Wilson</u>, 352 F.3d at 858; <u>Evans v. Smith</u>, 220 F.3d at 312. Petitioner has not established that he is entitled to relief on Ground Two. The undersigned therefore recommends that Respondent's Motion for Summary Judgment be granted on this claim.

## C. Ground Three

Petitioner claims in Ground Three that the indictments against him were "manufactured." Petitioner states, "During the course of my arrest, I was supposedly indicted, yet my indictments are true billed before the grand jury convenes to true bill them, voiding any conviction and sentence." Respondent seeks summary judgment on this claim, asserting it is not cognizable in federal habeas corpus. (<u>See</u> Dkt. No. 20 at 44-45.)

The Fourth Circuit has recognized that "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." <u>Ashford v. Edwards</u>, 780 F.2d 405, 407 (4th Cir. 1985). Due process requires that an accused be informed of the charges against him. <u>See Cole v. Arkansas</u>, 333 U.S. 196, 201 (1948); <u>see also In re Oliver</u>, 333 U.S. 257, 273 (1948). "It is generally sufficient that an indictment sets forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974).

To the extent Petitioner claims that the indictments against him were defective under South Carolina law, this claim is not cognizable on federal habeas review. <u>See Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) ("'[F]ederal habeas corpus relief does not lie for errors of state law.'" (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990))); <u>see also</u> 28 U.S.C. § 2254(a). To the extent Petitioner claims the indictments against him violated his right to due process, the undersigned disagrees. The indictments against Petitioner were sufficient to

18

inform Petitioner of the charges against him. (See App. 816-24.) The undersigned therefore recommends granting summary judgment to Respondent on Petitioner's claim that the indictments against him were "manufactured."

**D. Ground Four**

In Ground Four, Petitioner claims that a state expert presented false testimony; Petitioner states, "During trial the state called a witness to be an expert, yet she used terms not recognized in the medical field, and make up terms with no literature to support her finding." Respondent moves for summary judgment on this ground, contending that it is procedurally barred, and that he is entitled to summary judgment on the merits. (See Dkt. No. 22 at 30, 45 of 73.)

Respondent asserts Ground Four is procedurally barred because "[n]o objection or argument regarding the State's witness was made at trial." (Dkt. No. 20 at 45.) Respondent notes that Petitioner raised this claim as a freestanding claim in his amendment to his PCR application, but the PCR judge ruled only on the similar ineffective assistance of counsel claim. (Id.)

Respondent contends these "freestanding claims would have to have been asserted at the trial level and then raised on direct appeal" in order to be preserved. (Dkt. No. 20 at 30 of 73.) It does not appear that Petitioner raised this issue at trial or on direct appeal. Instead, as Respondent notes, Petitioner raised the issue in the amendment to his application for PCR. (See App. at 890.) The PCR judge did not address the freestanding claim, but he did address this claim as it relates to allegations of ineffective assistance of counsel. In his PCR application, Petitioner argued his trial counsel was ineffective for failing to object to testimony from the State's expert witness. In rejecting this claim, the PCR judge stated,

> This Court finds the Applicant has failed to meet his burden of proving trial counsel should have objected to testimony about [the] injury from the State's

19

expert witness. This Court notes trial counsel called Dr. Elizabeth Gibbs as an expert witness and that Dr. Gibbs rebutted the conclusions of the State's expert witness. As such, it was unnecessary for trial counsel to object to the testimony offered by the State's witness.

(Dkt. No. 22-11 at 64 of 68.)

Because Petitioner did not object to the at-issue testimony, it was not properly preserved for appellate review. See Cogdill v. Watson, 289 S.C. 531, 537, 347 S.E.2d 126, 130 (Ct. App. 1986) ("The failure to make an objection at the time evidence is offered constitutes a waiver of the right to object."); see also State v. White, 353 S.C. 566, 575, 578 S.E.2d 728, 733 (Ct. App. 2003) ("Although this testimony may have exceeded the proper boundaries of expert testimony . . . , we find that this issue is not preserved for our review as White's attorney failed to object to this testimony when it was elicited during trial. Thus, we decline to address this issue on appeal and necessarily hold that White's kidnapping conviction is affirmed."). Furthermore, while Petitioner made this argument in the amendment to his application for PCR, the PCR judge did not rule on it. Accordingly, this claim is procedurally defaulted. See Colwell v. Warden, No. 9:08–1828–HMH–PJG, 2009 WL 1743899, at *5 (D.S.C. June 18, 2009); see also Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion; Miller v. Padula, C.A. No. 2:07-3149-PMD, 2008 WL 1826495, at *10 (D.S.C. Apr. 23, 2008) (concluding the petitioner's claim that counsel was ineffective for failing to challenge the lack of timely action on the arrest warrant was not properly exhausted because the claim was not raised during the PCR hearing, and "[a]n issue not ruled upon by the PCR judge is not preserved for review on appeal," and the petitioner's "attempt to raise the new issue in his post-trial motion was

insufficient to preserve the issue for appeal"). The undersigned therefore recommends granting summary judgment to Respondent on this claim.[4]

## E. Ground Five

Petitioner claims in Ground Five that his habeas petition should be granted due to prosecutorial misconduct. Specifically, Petitioner states,

> During closing arguments the prosecutor made several unfair remarks that prejudiced the jury. She made improper remarks, vouched for the credibility of the states witnesses, cast the defense an aura of doubt by insinuating the defense had lied, inflaming the passions of the jury. Infringing upon the fact-finding function.

(Dkt. No. 1.) Respondent seeks summary judgment on this claim both on the merits and on the grounds that the claim is procedurally barred. (Dkt. No. 20 at 30, 47.)

Respondent contends that Ground Five is procedurally barred because "[c]ounsel did not object to the statements that Petitioner challenges in ground five," but instead objected only to the "golden rule argument made at the end of the State's closing." (Dkt. No. 20 at 30 of 73.) Respondent argues this objection was not sufficient to preserve the issue for review, as Petitioner did not move for a mistrial. (Id.)

In State v. Penland, 275 S.C. 537, 273 S.E.2d 765 (1981), the appellant argued the trial court "erred in denying his motion for a mistrial based on alleged improper remarks by the solicitor during closing arguments." Penland, 275 S.C. at 538, 273 S.E.2d at 766. The Supreme Court of South Carolina disagreed, stating,

> Although counsel objected to the remarks of the solicitor during closing arguments, a motion for a mistrial was not made until after the verdict. One may not preserve a vice until he learns what the result will be and then, take advantage of that error on appeal.

---

[4]"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." Napue v. Illinois, 360 U.S. 264, 269 (1959); see also Badsen v. Lee, 290 F.3d 602, 614 (4th Cir. 2002). Petitioner's claim also fails on the merits, because there is no evidence the at-issue testimony was false.

Appellant did not seek curative instructions to the jury, however, the trial judge informed the jury, at the time of counsel's objection, that the solicitor's argument was not to be considered as evidence. Appellant's failure to move for a mistrial constituted waiver.

Id. at 538-39, 273 S.E.2d at 766; see also State v. Varvil, 338 S.C. 335, 339, 526 S.E.2d 248, 251 (Ct. App. 2000) ("A defendant's failure to move for a mistrial on grounds of improper argument by the State constitutes a waiver of the issue on appeal.").

In the instant case, Petitioner's attorney objected after the following statements made by the prosecutor during her closing argument:

You have before you the most noble of opportunities. The chance to strike back against injustice and deliver a verdict that speaks the truth. You are the conscious of the community. You decide what crimes will and will not be tolerated–

(App. at 773.) The trial judge sustained Petitioner's objection. As Respondent contends, Petitioner did not move for a mistrial, either before or after the jury rendered its verdict. Because the courts of South Carolina would not now consider the issue, it is procedurally barred.

Regardless of the procedural bar, Respondent is entitled to summary judgment on this ground.[5] When examining claims pertaining to improper comments by a prosecutor,

---

[5]The PCR judge did address Petitioner's contention that his counsel was ineffective for failing to object during the prosecutor's closing argument. (See App. at 953-54.) The PCR order states, inter alia,

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the State's closing argument. The Court notes the solicitor is allowed to make statements about the facts of the case and comment on the testimony offered at trial. This Court finds there was no reason for trial counsel to object. Regardless, trial counsel testified it is a strategic decision not to object during closing argument. See Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (finding where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective assistance of counsel). This Court also notes that trial counsel did, in fact, object to the "golden rule" argument made by the solicitor during closing argument. (Trial transcript, p. 773, lines 6-9.)

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test–that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed

"[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). However, "it is not enough that the remarks were undesirable or even universally condemned." Id. "The analysis of a due process claim premised on unfair prosecutorial conduct may . . . depend on numerous factors, which include the nature of the prosecutorial misconduct, the extent of the improper conduct, the issuance of curative instructions from the court, any defense conduct inviting the improper prosecutorial response, and the weight of the evidence." Humphries v. Ozmint, 397 F.3d 206, 218 (4th Cir. 2005).

In his Memorandum in Support of his § 2254 petition, Petitioner points to the same passage above:

> You have before you the most noble of opportunities. The chance to strike back against injustice and deliver a verdict that speaks the truth. You are the conscious of the community. You decide what crimes will and will not be tolerated–

(App. at 773.) As Respondent notes, trial counsel objected, and the objection was sustained. (Id.) In his memorandum, Petitioner states, *inter alia*,

> A prosecutor may not express personal opinions about the defendant's guilt or credibility, and should avoid making unfair or improper remarks about the defendant. The prosecutor cannot vouch for the credibility of the government witnesses, or allude to his or her own personal integrity or oath of office to bolster the government's case.

(Dkt. No. 1-3 at 28 of 66.) Petitioner also points to the following passages in the prosecutor's closing argument:

---

to present specific and compelling evidence that trial counsel committed errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland–that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.
(Dkt. No. 22-11 at 64-65 of 68.)

Ladies and gentlemen, those set of facts can't be fabricated. That can't be made up. It has the ring of truth. And certainly not the type of evidence or testimony that you heard from the defendant or from witnesses on his behalf. . . .

The Judge is going to address you on the charge of reasonable doubt. And, ladies and gentlemen, there is no reasonable doubt in this case. All the evidence points in one direction and it's right over there. Sufficient evidence leaves you firmly convinced because one thing stands like stone. He did it. He did it and that's the only logical explanation for why we're here. For why these children have consistently maintained what happened to them over and over and over again.

(App. at 764, 772.) Petitioner "assert[s] that the cumulative effect of the prosecutor's improper closing remarks has become overwhelming, and warrants a new trial, or that the conviction be set aside." (Dkt. No. 1-3 at 30 of 66.)

The undersigned recommends granting summary judgment to Respondent because the prosecutor's comments did not so infect the trial with unfairness as to make the resulting convictions a denial of due process. As Respondent notes, trial counsel objected to the first passage, and that objection was sustained. Petitioner also complains that the prosecutor vouched for the State's witnesses. As the Fourth Circuit has noted,

It is impermissible for a prosecutor to vouch for or bolster the testimony of government witnesses in arguments to the jury. Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury. While vouching and bolstering are always inappropriate, improper remarks during closing argument do not always mandate retrial. The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.

United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997) (internal quotation marks and citations omitted).

Assuming the prosecutor vouched for the government's witnesses during her closing argument, the undersigned does not find that the prosecutor's comments so infected the trial with unfairness as to deny the Petitioner due process. The solicitor's comments were not such as to mislead the jury in any way, and there was competent evidence on which the

jury could have established Petitioner's guilt, notwithstanding the cited remarks. Moreover, the trial judge instructed the jurors at the beginning of the trial that "[w]hat the attorneys tell you is not evidence in this case." (App. at 123.) He explained that the jurors must base their decision as to guilt or innocence "upon the evidence, whether it's in the form of testimony or whether it's exhibits that are allowed into the trial." (App. at 123, 129; see also App. at 774.) In addition, the judge told the jurors that it was their duty to "analyze and to evaluate all of the evidence that has been presented . . . and to determine that evidence which convinces you of its truth." (App. at 775-76.) Hence, applying the four-factor test employed by the Fourth Circuit Court of Appeals, even assuming arguendo that the cited comments were improper, they were not so damaging as to require reversal in this case. See United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983).

**F. Ground Six**

In Ground Six, Petitioner contends the trial judge abused his discretion by twice denying Petitioner's motion for directed verdict. Petitioner states, "On two separate occasions, when evidence at trial was insufficient to prove the elements, trial judge denied, but offered defense to consider lesser charge." Respondent moves for summary judgment on the grounds that the claim is procedurally barred and that Petitioner is not entitled to relief on the merits.

In his Memorandum in Support of his § 2254 petition, Petitioner conclusively argues that his conviction should be reversed based on lack of evidence. (See Dkt. No. 1-3 at 34 of 66.) Petitioner essentially contends that there was not enough evidence to convict him of the crimes charged. Although claims of insufficient evidence are cognizable on collateral review, "a federal court's review of such claims is 'sharply limited.'" Wilson v. Greene, 155 F.3d 396, 405 (4th Cir. 1998). As the Fourth Circuit stated in Wilson,

> Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the

state's system of direct appellate review. Thus, a defendant is entitled to relief only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

Wilson, 155 F.3d at 405-06 (internal quotation marks and citations omitted).

Under South Carolina law, "[a] person is guilty of criminal sexual conduct with a minor in the first degree if . . . the actor engages in sexual battery with a victim who is less than eleven years of age." S.C. CODE § 16-3-655(A)(1). The South Carolina Code defines the term "sexual battery" as follows:

> "Sexual battery" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes.

S.C. CODE § 16-3-651(h). In addition, South Carolina Code § 16-15-140 provided that

> [i]t is unlawful for a person over the age of fourteen years to wilfully and lewdly commit or attempt to commit a lewd or lascivious act upon or with the body, or its parts, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the person or of the child. . . .

S.C. CODE § 16-15-140.

The first victim (hereinafter the "CSC victim") testified that, at the time of trial, she was eight years old. (App. at 137.) She testified that while she was sitting on the couch, while her sister Kristy was asleep in another room, Petitioner started touching her legs and told her to "scoot down." (App. at 145.) She marked on a diagram the place Petitioner touched her, and she called it her "[p]rivate part." (Id. at 147.) She testified that she knew Petitioner used his finger to touch the inside of her private part because she felt it. (Id. at 149.) The second victim testified that, at the time of trial, she was nine years old and in the third grade. (App. at 199.) She also testified that she was woken up by Petitioner rubbing her stomach. (Id. at 204.) She further testified that Petitioner used his finger to touch her stomach and her "private part." (Id. at 205-06.)

26

In light of this testimony, the jury could have found proof of guilt beyond a reasonable doubt. There was testimony that the CSC victim was less than eleven years of age, and that Petitioner placed a finger inside the victim's "private part." There was also testimony that Petitioner touched her private part on more than one occasion. In addition, the second victim testified that she was nine years old at the time Petitioner used his finger to touch her "private part." In light of this evidence, Petitioner is not entitled to federal habeas relief on this ground.

**G. Ground Seven**

Petitioner contends in Ground Seven that the trial judge abused his discretion by "not allowing medical, which if allowed would have shown that purported injury, was if an injury prior to the supposed crime." According to Petitioner, "[m]edical records at trial would have shown that injury supposedly committed . . . was actually a prior injury unrelated to defendant." Respondent moves for summary judgment on this ground, contending that because the claim hinges on state law, not federal law, the claim "falls outside the jurisdiction of this Court." (Dkt. No. 20 at 53 of 73.)

"[I]n considering federal habeas corpus issues involving state evidentiary rulings, [federal courts] 'do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.'" Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008) (quoting Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000)). "'It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented.'" Id. (quoting Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993)).

Petitioner does not identify any constitutional right at issue in the trial judge's ruling. Moreover, while Petitioner contends in his memorandum that the trial judge excluded evidence that the injury "was caused by a prior accident that occurred *before* allegations

made against the Petitioner," the record reveals that the objection was made "as to treatment dates of August 12th . . . , that is *after* the period of time in which allegations were made against Mr. Boan." (See Dkt. No. 1-3 at 35 of 66 (emphasis added); App. at 534 (emphasis added)). Because Petitioner has not shown he is entitled to relief on this ground, the undersigned recommends granting Respondent's Motion for Summary Judgment on Ground Seven.

## H. Ground Eight

In Ground Eight, Petitioner contends the trial judge erred in combining "two trials into one." Petitioner contends that "the allegations in regards to [the CSC victim] were far more serious than the allegations regarding [the second victim]." (Dkt. No. 1-3 at 37 of 66.) Petitioner states,

> Although the trial judge appeared to rule that allowing consolidation of the charges prejudiced the defendant, he held it did not "unduly prejudice" the defendant's substantial rights. This ruling was clearly erroneous. The trial judge even acknowledged that he may have committed error by "prejudicing" the defendant's right in some fashion, and that it would be up to the appeals court to grant Mr. Boan a new trial.

(Dkt. No. 1-3 at 37-38 of 66.) Respondent contends that he is entitled to summary judgment because (1) this claim is not cognizable on federal habeas review, and (2) Petitioner fails to show the trial court abused its discretion in consolidating the cases. (See Dkt. No. 20 at 53-57 of 73.)

The undersigned agrees with Respondent that Ground Eight is not cognizable on federal habeas review. The only cases cited by Petitioner in his memorandum in support of this claim are South Carolina cases. (See Dkt. No. 1-3 at 37-38 of 66.) Similarly, in addressing the merits of this claim, Respondent cited only South Carolina cases. (See Dkt. No. 20 at 56-57 of 73.) To the extent Petitioner claims the trial judge's consolidation of the indictments for trial violated South Carolina law, that claim is not cognizable in the instant action. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief

28

does not lie for errors of state law."); see also Johnson v. Bodison, No. 6:09-1037-TLW-WMC, 2010 WL 1346372, at *9-10 (D.S.C. Feb. 10, 2010) (concluding that petitioner's complaint that "all three charges were on one indictment" was not cognizable in federal habeas corpus).

To the extent Petitioner contends the consolidation violated clearly established federal law, the undersigned disagrees. In Spencer v. Texas, 385 U.S. 554 (1967), the Supreme Court stated,

> [A]ll joint trials, whether of several codefendants or of one defendant charged with multiple offenses, furnish inherent opportunities for unfairness when evidence submitted as to one crime (on which there may be an acquittal) may influence the jury as to a totally different charge. This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest.

Spencer, 385 U.S. at 562. "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986). Indeed,

> [j]oinder of offenses rises to the level of a constitutional violation only if it "actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process." Tribbitt v. Wainwright, 540 F.2d 840, 841 (5th Cir. 1976). In considering whether a violation of due process has occurred, the emphasis must be on the word "actually"; for, viewed clearly, it is only the consequences of joinder, and not the joinder itself, which may render the trial fundamentally unfair. . . .
> . . . . Therefore, where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded at trial.

Herring v. Meachum, 11 F.3d 374, 377-78 (2d Cir. 1993) (some internal quotation marks and citations omitted); see also Opper v. United States, 348 U.S. 84, 94 (1954) (rejecting the petitioner's complaint that the conspirators were tried jointly, noting that "[o]ther than this

29

general possibility of confusion [in that the jury might have improperly considered statements of a codefendant . . . in reaching its verdict as to petitioner], he points out nothing specifically prejudicial as resulting from the joint trial.").

In the instant case, Petitioner has pointed out no actual prejudice from the trial court's granting the State's motion to consolidate. Accordingly, the undersigned recommends granting summary judgment to Respondent on this claim.

## I. Ground Nine

Petitioner claims in Ground Nine that the trial judge "allowed the use of perjured" testimony. Listing eight witnesses who allegedly committed perjury, Petitioner states,

> The record is before this Court and is clearly demonstrative of the fact that several of the State's witnesses openly disclosed that they had perjured themselves by giving false statements to police. Testimony given by these witnesses show[s] clearly that each witness committed perjury. However, the trial judge erred by allowing these testimonies in spite of the fact that these witnesses clearly committed said perjury.

(Dkt. No. 1-3 at 40 of 66.) Respondent moves for summary judgment, contending that the claim is both procedurally barred and without merit. (See Dkt. No. 20 at 57-59 of 73.)

As noted above, "it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." Napue v. Illinois, 360 U.S. 264, 269 (1959); see also Badsen v. Lee, 290 F.3d 602, 614 (4th Cir. 2002). However, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses does not establish the government's knowing use of false testimony." United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987) (citations omitted). Petitioner's conclusory allegations of perjury do not meet this standard; he has not shown any testimony was perjured, and, as a result, he has also failed to show that the prosecution knowingly used any perjured testimony. The undersigned therefore recommends granting summary judgment on Ground Nine.

**J. Ground Ten**

In Ground Ten, Petitioner contends the trial court erred in charging the jury on "reasonable doubt." Petitioner states that the trial judge's "definition of 'reasonable doubt' was broad and vague, thereby confusing the jury as to the meaning" of reasonable doubt. (Dkt. No. 1-3 at 39 of 66.) Petitioner points to the following passage in the jury charge:

> So, ladies and gentlemen, what is reasonable doubt under law? A reasonable doubt is a doubt which makes an honest, sincere, conscience juror in search of the truth in the case to hesitate to act. Proof beyond a reasonable doubt must therefore but proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs. Reasonable doubt may arise from the evidence which is in the case or from the lack of evidence that is in the case.
> Ladies and gentlemen, proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. And there are very few things in this world that we know with absolute certainty. And in criminal cases, the law does not require proof that overcomes every possible doubt. The law does not require that.
> If based on your consideration of the evidence, you are firmly convinced the defendant [is] guilty of the crime charged, you must find him guilty. If, however, on the other hand you think there is a real possibility that he is not guilty you must give him the benefit of that doubt and find him not guilty.

(App. at 785-86.) Petitioner argues he is entitled to habeas relief because the definition of reasonable doubt was "very broad and vague[,] leading the jury to believe that the defendant could be convicted even if doubt was present in their minds." (Dkt. No. 1-3 at 40.)

Respondent is entitled to summary judgment on this claim. As the Fourth Circuit has stated,

> Although due process requires that the government prove each element of an offense beyond a reasonable doubt, the Constitution neither requires that trial courts define reasonable doubt nor prohibits them from doing so. And, when a trial court elects to define reasonable doubt, the Constitution does not mandate a particular definition. Rather, the question is whether the instruction, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury.

31

<u>Baker v. Corcoran</u>, 220 F.3d 276, 292 (4th Cir. 2000) (citations omitted). Although it is not clear as to exactly which portion of the definition of reasonable doubt Petitioner finds objectionable, Petitioner complains that the definition led the jury to believe they could convict Petitioner "even if doubt was present in their minds." (Dkt. No. 1-3 at 40.) It appears that Petitioner objects to the portion of the instruction that "in criminal cases, the law does not require proof that overcomes every possible doubt." However, the Supreme Court rejected a similar objection in <u>Victor v. Nebraska</u>, 511 U.S. 1 (1994).

In <u>Victor</u>, the Supreme Court rejected appellant Sandoval's objection to the portion of the jury charge "in which the judge instructed the jury that a reasonable doubt is 'not a mere possible doubt.'" <u>Victor</u>, 511 U.S. at 17. The Court stated,

> The <u>Cage</u> instruction included an almost identical reference to "not a mere possible doubt," but we did not intimate that there was anything wrong with that part of the charge. That is because a "reasonable doubt," at minimum, is one based upon reason. A fanciful doubt is not a reasonable doubt. As Sandoval's defense attorney told the jury: "Anything can be possible . . . . [A] planet could be made out of blue cheese. But that's really not in the realm of what we're talking about." That this is the sense in which the instruction uses "possible" is made clear from the final phrase of the sentence, which notes that everything "is open to some possible or imaginary doubt." We therefore reject Sandoval's challenge to this portion of the instruction . . . .

<u>Victor</u>, 511 U.S. at 17 (internal quotation marks and citations omitted) (citing <u>Cage v. Louisiana</u>, 498 U.S. 39, 40 (1990)). In light of the Supreme Court's ruling in <u>Victor</u>, and the remainder of the jury instruction on reasonable doubt, the undersigned concludes that, "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." <u>Holland v. United States</u>, 348 U.S. 121, 140 (1954). It is therefore recommended that Respondent's Motion for Summary Judgment be granted as to Ground Ten.

**K. Ground Eleven**

In Ground Eleven, Petitioner contends his counsel was constitutionally ineffective for numerous reasons. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's

performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Id. at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id.

Respondent moves for summary judgment on Ground Eleven. The undersigned will address all the claims of ineffective assistance of counsel in turn.

### (1) Failure to Raise Insufficiency of the Evidence

Petitioner contends his counsel was constitutionally ineffective because his counsel "failed to raise the issue of insufficient evidence to prove the elements of the charges against the defendant." (Dkt. No. 1-3 at 43.) More specifically, Petitioner contends that the State failed to prove a sexual battery. (Id. at 44.) In addition, Petitioner states, "Counsel did file a motion for a directed verdict, but could have challenged the issues to preserve them for the record, but failed to do so." (Id.)

Respondent claims this allegation is procedurally barred. (See Dkt. No. 20 at 61.) The undersigned agrees. This allegation is not addressed in the PCR court's order, and no

motion pursuant to Rule 59 was filed. <u>See Montgomery v. Bodison</u>, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion; <u>Miller v. Padula</u>, C.A. No. 2:07-3149-PMD, 2008 WL 1826495, at *10 (D.S.C. Apr. 23, 2008) (concluding the petitioner's claim that counsel was ineffective for failing to challenge the lack of timely action on the arrest warrant was not properly exhausted because the claim was not raised during the PCR hearing, and "[a]n issue not ruled upon by the PCR judge is not preserved for review on appeal," and the petitioner's "attempt to raise the new issue in his post-trial motion was insufficient to preserve the issue for appeal").

Regardless of the procedural bar, the instant claim also fails on the merits. As Petitioner admits, trial counsel *did* move for a directed verdict, and that motion was denied. Moreover, as discussed above, the State did present evidence of a sexual battery. Petitioner's claim is therefore without merit.

### (2) Failure to Request a Jury Instruction on a Lesser Included Offense

Petitioner complains that his trial counsel failed to request a jury instruction on the lesser included offense of assault and battery. (Dkt. No. 1-3 at 43-44.) As Respondent notes, the PCR court did not rule on this allegation. It is, therefore, procedurally barred. <u>See Montgomery</u>, 2010 WL 297667, at *4.

### (3) Failure to Object to Perjury or Impeach Witnesses with Prior Statements

Petitioner contends that his counsel was constitutionally ineffective for failing to object to perjury, or, in the alternative, to impeach the victims using their prior statements. (Dkt. No. 1-3 at 44-45.) Because the PCR court did not rule on this claim, it is procedurally barred. <u>See Montgomery</u>, 2010 WL 297667, at *4. Moreover, as discussed above, Petitioner has not shown that any of the witnesses committed perjury. And, as Respondent notes,

counsel did cross-examine the victims using their prior statements. (See App. at 164-88; 214-24.) Petitioner is therefore not entitled to relief on this claim.

### (4) Failure to Object to Prejudicial Remarks in the Closing Argument

Without specifically identifying the alleged improper statements, Petitioner complains that counsel "failed to object or challenge the prosecution's improper remarks, save one, during closing arguments." (Dkt. No. 1-3 at 45.) The PCR court noted, however, that Petitioner stated trial counsel should have objected to the following aspects of the State's closing argument:

> (1) that the State attempted to interpret the law, (2) that the Applicant was on trial because he was guilty, (3) that the defense witnesses were liars, and (4) that the jury was the "conscience of the community."

(Dkt. No. 22-11 at 61 of 68.) The PCR judge then noted trial counsel's testimony:

> Trial counsel stated that he did object–based on the golden rule doctrine–to the "conscience of the community" comment in the State's closing argument. Trial counsel stated it is acceptable for a closing argument to contain an attorney's interpretation of the facts. Trial counsel stated he would have objected to anything in the State's closing that was prejudicial and noted that the decision whether or not to object during closing is a strategic one.

(Id. at 62.) The PCR judge found trial counsel's testimony was credible while Petitioner's testimony was not credible. (Id.) The PCR court's order rejecting this claim states,

> This Court finds the Applicant has failed to meet his burden of proving trial counsel should have objected to the State's closing argument. This Court notes the solicitor is allowed to make statements about the facts of the case and comment on the testimony offered at trial. This Court finds there was no reason for trial counsel to object. Regardless, trial counsel testified it is a strategic decision not to object during closing argument. See Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (finding where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective assistance of counsel). This Court also notes that trial counsel did, in fact, object to the "golden rule" argument made by the solicitor during closing argument. (Trial Transcript, p. 773, lines 6-9).
>
> Accordingly, this Court finds the Applicant failed to prove the first prong of the Strickland test–that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to

present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of <u>Strickland</u>–that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. <u>See Frasier v. State</u>, 351 S.C. at 386, 570 S.E.2d at 174.

(Dkt. No. 22-11 at 64-65 of 68.)

Petitioner has not shown the PCR court's determination of this issue was contrary to, or an unreasonable application of, clearly established federal law. <u>See United States v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of <u>Strickland</u>, we apply a strong presumption that trial counsel's strategy and tactics fall within the wide range of reasonable professional assistance."); <u>see also McCarver v. Lee</u>, 221 F.3d 583, 594 (4th Cir.2000) ("In evaluating trial counsel's performance, [the court] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance."); <u>Curry v. Warden</u>, No. 6:07-2933-HFF-WMC, 2008 WL 3887648, at *11 (D.S.C. Aug. 21, 2008) (finding the petitioner was not entitled to habeas relief on claim of ineffective assistance of counsel for failure to object to prosecutor's statement in closing argument where, *inter alia*, counsel testified as to his strategic reasons for not objecting). Petitioner is not entitled to relief on this claim.

**(5) Conflict of Interest**

Petitioner claims his counsel was constitutionally ineffective because he "committed a 'conflict of interest' and deprived Petitioner of a fair trial." (Dkt. No. 1-3 at 43.) As Respondent notes, this claim is essentially the same claim discussed in Ground One. For the reasons set forth above, the undersigned recommends granting summary judgment to Respondent on this claim.

**L. Ground Twelve**

In Ground Twelve, Petitioner claims his conviction on Indictment 0592 and Indictment 0593 violates the Double Jeopardy Clause. (Dkt. No. 1-3 at 48.) Petitioner contends that these indictments (one which charges Criminal Sexual Conduct With a Minor, First Degree, and the other which charges Committing or Attempting a Lewd Act Upon a Child) violate the Double Jeopardy Clause because "it was the same person, same conduct, [and] area of location." (Id.)

Respondent contends this claim is procedurally barred and that Petitioner is not entitled to relief on the merits. The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend V. The Supreme Court has determined this clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 440 (1989) (abrogated on other grounds by Hudson v. United States, 522 U.S. 93 (1997)). Petitioner's claim is based on the third of these protections.

Petitioner was found guilty of two offenses with the same victim: Criminal Sexual Conduct with a Minor, First Degree, and Committing or Attempting a Lewd Act Upon a Child. In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court stated,

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Blockburger, 284 U.S. at 304. The Court stated in a later opinion that

> [t]his test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . ."

Brown v. Ohio, 432 U.S. 161, 166 (1977) (quoting Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975)).

The Supreme Court of South Carolina has explicitly ruled that "the offense of committing a lewd act upon a minor is not a lesser included offense of first degree criminal sexual conduct on a minor." State v. Norton, 286 S.C. 95, 96, 332 S.E.2d 531, 533 (1985). In Norton, the appellant argued that because he had been acquitted of first degree criminal sexual conduct with a minor, the trial judge should have quashed the indictment charging him with committing a lewd act upon a minor. Id. at 96, 332 S.E.2d at 532. Rejecting this argument, the Supreme Court of South Carolina stated,

> Each statute requires proof of an element not required by the other. The crime of first degree criminal sexual conduct with a minor requires that sexual battery be committed. "Sexual battery", as defined in § 16-3-651(h), requires some "intrusion, however slight, of any part of a person's body ... into the genital or anal openings of another person's body ..." Criminal sexual conduct with minors further requires that the victim be less than eleven years of age.
> The crime of committing a lewd act on a minor, on the other hand, does not require a sexual battery. Rather, the person committing the crime must act with the intent of appealing to the lust or passions of himself or the child. This crime refers to victims under the age of fourteen.
> We hold that reindictment for the offense of committing a lewd act upon a child did not place the appellant in double jeopardy after his acquittal for first degree criminal sexual conduct with the child.

Norton, 286 S.C. at 97, 332 S.E.2d at 532-33.

Because each of the crimes at issue require proof of a fact that the other does not, Petitioner's claim that his convictions violate the Double Jeopardy Clause is without merit. The undersigned recommends granting summary judgment to Respondent on Ground Twelve.

**M. Ground Thirteen**

Petitioner asserts in Ground Thirteen that there was a Batson violation during the jury selection process and that his equal protection rights were violated. In his memorandum in

support of his § 2254 petition, Petitioner contends that a lack of subject matter jurisdiction "can be raised at any time whenever found." (Dkt. No. 1-3 at 50.) He further states,

> Pro-Se says by the state excluding Hispanics, Mexicans, Puerto Ricans, Cubans and other races from his Grand Jury panel just because of their language and races "tanted" [sic] the whole judicial process and denied Pro-Se equal protection of law and denied due process.

(Id.) Petitioner argues that, due to the State's "acts at the Grand Jury's panels level," the indictments "are now 'jurisdictionally defective and void by law' because they were obtained in a racially discriminatory manner." (Id. at 51.)

To the extent Petitioner claims the trial court lacked subject matter jurisdiction, that claim is not cognizable in the instant federal case. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); see also Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) (holding jurisdiction is a matter of state law); Von Longmore v. South Carolina, No. C.A. 9:05-CV-2112-MBS, 2006 WL 2827416, at *6 (D.S.C. Sept. 27, 2006) ("Petitioner is not entitled to federal habeas relief because the subject matter jurisdiction of a state trial court is a state law issue.").

"The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors." Batson v. Kentucky, 476 U.S. 79, 86 (1986). Under the three-part test created by the Supreme Court in Batson, a defendant may establish a prima facie case of discrimination by the prosecutor by showing that: (1) the defendant is a member of a distinct racial group; (2) the prosecutor has used the challenges to remove from the venire members of the defendant's race; and (3) other facts and circumstances surrounding the proceeding raise an inference that the prosecutor discriminated in his or her selection of the jury pool. Batson, 476 U.S. at 96-97; see also Keel v. French, 162 F.3d 263, 271 (4th Cir. 1998). In Powers v. Ohio, 499 U.S. 400 (1991), the Supreme Court modified Batson to allow defendants of races different

than the excused jurors to have standing to raise <u>Batson</u> challenges. <u>See Powers</u>, 499 U.S. at 415. Once the defendant establishes a prima facie case, the burden shifts to the prosecution to advance a non-discriminatory reason for the exercise of the peremptory challenges. <u>Batson</u>, 476 U.S. at 97. The trial court then determines whether the defendant has proven intentional discrimination. <u>Id</u>. at 98.

In the instant case, it does not appear that Petitioner raised a <u>Batson</u> issue at any time during his trial. Accordingly, any objection pursuant to <u>Batson</u> was waived. <u>See State v. Gil</u>, 327 S.C. 253, 254, 489 S.E.2d 478, 478 (1997) (finding the Court of Appeals "erred in reaching the <u>Batson</u> 'mixed motive' issue because it was not properly preserved for appeal, never having been raised to or ruled upon by the trial judge"); <u>see also Morning v. Zapata Protein (USA), Inc.</u>, 128 F.3d 213, 216 (4th Cir. 1997) (declining to address the merits of a <u>Batson</u> claim because "a <u>Batson</u> challenge raised after the venire has been excused has been raised too late").[6] The undersigned recommends granting summary judgment to Respondent on Ground Thirteen.

## N. Ground Fourteen

[6]Petitioner did raise this in his PCR application, but he abandoned it at the hearing. The undersigned notes that Respondent contends none of the State's strikes were against Hispanics. (<u>See</u> Dkt. No. 20 at 71 of 73.) It is not possible, however, from a review of the pages cited by Respondent, to determine the ethnicity of the jurors stricken.

To the extent Petitioner claims that Hispanics were excluded from the jury pool in violation of federal law, that contention must be rejected.

> To make out a prima facie case for violation of the Sixth Amendment right to a jury venire that is a "fair cross-section" of the community, [a petitioner] must establish that (1) a "distinctive" segment of the community (2) is "substantially underrepresented" in the jury pool (3) as a result of "systematic exclusion" of the group.

<u>Truesdale v. Moore</u>, 142 F.3d 749, 755 (4th Cir. 1998) (citing <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979)). As noted in <u>Truesdale</u>,

> The use of voter registration lists "has been consistently upheld against both statutory and constitutional challenges, unless the voter list in question had been compiled in a discriminatory manner."

<u>Truesdale</u>, 142 F.3d at 755 (quoting <u>United States v. Cecil</u>, 836 F.2d 1431, 1445 (4th Cir. 1988)). In the instant case, the juror venire list was derived from three lists: those with South Carolina driver's licenses, those with South Carolina identification cards, and those on the voter registry. (<u>See</u> App. at 23.) There is no evidence that any of these lists were compiled in a discriminatory manner. Petitioner is therefore entitled to no relief on this claim.

Petitioner claims in Ground Fourteen that the "judge orally pronounced a twenty (20) year sentence, but wrote thirty (30) years on [his] sentencing sheet for the charge of Criminal Sexual Conduct 1st Degree With a Minor." (Dkt. No. 1-3 at 36 of 66.) Petitioner requests this Court to correct the sentence imposed.

Petitioner is not entitled to relief on Ground Fourteen. The Supreme Court of South Carolina remedied this issue in an order filed July 12, 2010. (<u>See</u> Dkt. No. 20-20.) The matter was remanded to the lower court for resentencing, and on August 13, 2011, Petitioner's sentence for Criminal Sexual Conduct with a Minor, First Degree, was amended "to reflect the oral sentence issued following Petitioner's trial on the . . . indictment: twenty (20) years." (Dkt. No. 20-22.)

Because Petitioner was granted relief on this claim in state court, Petitioner is not entitled to relief on this claim herein. Respondent's motion for summary judgment should be granted.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 21) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. The undersigned further RECOMMENDS that a certificate of appealability be DENIED.[7]

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

July 31, 2012
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

---

[7]     Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>    (B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).